IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JERMAINE WESLEY DAY,

    Plaintiff,

        v.

CITY OF ATLANTA, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:21-CV-4853-TWT

**OPINION AND ORDER**

    This is a civil rights action. It is before the Court on the Defendants' Motion to Dismiss [Doc. 2]. For the reasons set forth below, the Court GRANTS in part and DENIES in part the Defendants' Motion to Dismiss [Doc. 2]. The Plaintiff may amend his pleadings within 14 days of this Order in accordance with the Court's instructions.

    **I.   Background**

    The Court accepts the facts alleged in the Complaint as true for purposes of the Defendants' Motion to Dismiss and limits its consideration to the pleadings and the exhibits attached thereto. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). On June 14, 2020, the Plaintiff Jermaine Wesley Day was driving around the parking lot at Lenox Square Mall while his friend picked up a to-go order at the Cheesecake Factory. (Compl. ¶ 11.) The same day, Defendant Kensley Gachette, an officer with the Atlanta Police Department, was working an approved "extra job" at the mall. (*Id.* ¶¶ 4,

10.) Officer Gachette received a dispatch call informing him that the Plaintiff's car was blocking three women into a parking space. (*Id.* ¶¶ 4, 10, 12.) Responding to the call, Officer Gachette approached the Plaintiff and demanded that he leave the mall premises. (*Id.* ¶ 13.) However, the officer first allowed the Plaintiff to pick up his friend and request a refund for his food at the Cheesecake Factory. (*Id.* ¶ 14.)

At the restaurant, Officer Gachette learned that the Plaintiff's friend had his own car at Lenox Square and could meet the Plaintiff off-site after picking up their food. (*Id.*, Ex. A at 2.) Officer Gachette then ordered the Plaintiff "over and over again" to leave the property. (*Id.*, Ex. A at 2.) But rather than comply with this order, the Plaintiff states that he remained at the mall and "tried to get an understanding of why he was asked to leave the premises[.]" (*Id.*, Ex. A at 14.) Officer Gachette arrested the Plaintiff, placed him in the back of a squad car, and wrote him a citation for criminal trespass. (*Id.* ¶¶ 16-17.) After some unknown duration, the Plaintiff began crying, screaming, and kicking the backseat of the car and yelling, "I can't breathe!" because the car was "very hot." (*Id.* ¶ 18 & Ex. A at 14-15.) Firefighters and an ambulance were called to the scene in response to an onlooker's 9-1-1 call. (*Id.* ¶¶ 20-21, 25.) Officer Gachette, meanwhile, threatened to charge the Plaintiff with damage to government property for his outburst. (*Id.* ¶¶ 19.)

Due to either "excessive heat" or an "enormous surge of anxiety and claustrophobia," the Plaintiff fainted in the squad car and woke up on the

2

ground to EMTs administering medical aid. (*Id.* ¶¶ 22, 26 & Ex. A at 15.) The Plaintiff's vitals showed that he had low blood pressure and was overheated. (*Id.* ¶ 27.) After the Plaintiff was placed in the ambulance, a female EMT allegedly said that many observers had recorded the incident and saw Officer Gachette tase the Plaintiff. (*Id.* ¶¶ 28-29.) The Plaintiff was taken to Grady Hospital with injuries to his wrists, shoulders, and legs, and he also claims to have suffered mental injuries following his arrest. (*Id.* ¶ 31 & Ex. A at 15.)

More than a year after these events, the Plaintiff filed suit against Officer Gachette, Chief of Police Rodney Bryant, and the City of Atlanta for violations of his civil rights. The Complaint asserts six claims against the Defendants collectively in their individual and official capacities: violations of the Fourth, Eighth, and Fourteenth Amendments under 42 U.S.C. § 1983 (Count One), vicarious liability under 42 U.S.C. § 1983 (Count Two), unspecified "state law claims" (Count Three), false imprisonment (Count Four), and punitive damages (Count Five), attorney's fees (Count Five (repeated)), and damages (Count Six). The Defendants now move to dismiss all of the claims against them under Federal Rule of Civil Procedure 12(b)(6).

## II.    Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, though, even if it is

"improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting the plaintiff "receives the benefit of imagination" at the pleading stage). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of his claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

### III. Discussion

The Defendants raise different grounds for dismissing the claims against the City, Chief Bryant, and Officer Gachette. First, they argue that the Plaintiff's allegations do not make out an unconstitutional municipal policy or custom, as required to hold the City liable under *Monell v. New York City Department of Social Services*, 436 U.S. 689 (1978). Next, they argue that the claims against Chief Bryant are impermissibly based on a theory of *respondeat superior* rather than his own personal conduct. And finally, they argue that Officer Gachette is entitled to qualified immunity because he had probable

cause to arrest the Plaintiff for criminal trespass. Before turning to these merits arguments, the Court dismisses any claims that are pled against Chief Bryant and Officer Gachette in their official capacities. As the Eleventh Circuit has explained:

> [W]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which the officer is an agent. Such suits against municipal officers are therefore, in actuality, suits against the city that the officer represents.

*Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (quotation marks and citation omitted). It would be "redundant" and "possibly confusing," then, to retain the Plaintiff's official-capacity claims when the City is already a defendant in this action. *Id.*

### A. *Monell* Liability as to the City

Count Two of the Complaint alleges that the City is vicariously liable for the constitutional violations committed against the Plaintiff. (Compl. ¶¶ 37-39.) However, following the Supreme Court's decision in *Monell*, *respondeat superior* or vicarious liability is not a viable basis for a § 1983 suit against a municipality. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). Instead, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *Id.* (emphasis in original). More specifically, "[i]t is only when the execution of the government's *policy or custom* inflicts the injury that the municipality may be held liable." *Id.* (emphasis added) (quotation marks and alteration omitted);

5

*see also Underwood v. City of Bessemer*, 11 F.4th 1317, 1333 (11th Cir. 2021) ("[T]he plaintiff must demonstrate the municipality's policy or custom was the 'moving force' behind the alleged constitutional violation."). So to make out a *Monell* claim against the City, the Plaintiff must allege (1) that his constitutional rights were violated; (2) that the City had a policy or custom that constituted deliberate indifference to those constitutional rights; and (3) that the policy or custom caused the violation. *See Underwood*, 11 F.4th at 1333.

The Supreme Court has also held that, in "limited circumstances," a § 1983 claim can arise from a municipality's failure to train or supervise its police officers. *City of Canton, Ohio*, 489 U.S. at 387. These limited circumstances occur:

> [O]nly where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . . Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.

*Id.* at 388-89 (citations omitted). The "deliberate indifference" standard sets a high bar to § 1983 liability. It requires a plaintiff to present evidence that the municipality knew of a need to train or supervise in a particular area but made a deliberate choice not to take corrective action. *See Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). The need for training is obvious when there is a pattern of constitutional violations by municipal employees or when the failure to train is likely to result in a constitutional violation. *See id.* at

6

1351-52; *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1397-98 (11th Cir. 1994).

Here, the Complaint contains a single sentence related to an illegal policy or custom: "Defendants have a persistent and widespread practice of allowing and promoting excessive force incidents, failing to properly train and supervise officers, and being deliberately indifferent to the serious needs of citizens[.]" (Compl. ¶ 38.) There are no specific facts to substantiate this conclusory statement. Other than the Plaintiff's own experience, the Complaint identifies no written policy adopted by a City decisionmaker, no prior incidents involving City police officers, and no examples of the City's insufficient training and supervision. This solitary allegation does not raise a plausible inference of *Monell* liability under the *Twombly-Iqbal* pleading standard. (*Contra* Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 10, 13); *See Iqbal*, 556 U.S. at 678 (holding a presumption of truth does not apply to "[t]hreadbare recitals of a cause of action's elements"). Thus, the Court dismisses all of the claims against the City—but without prejudice since the Complaint's deficiencies are factual, not legal. The Plaintiff has leave to amend the Complaint within 14 days of this Order in accordance with the discussion above. *See* Fed. R. Civ. P. 15(a)(2).

### B. *Respondeat Superior* as to Chief Bryant

The Plaintiff's allegations against Chief Bryant are even more sparse than those against the City. Chief Bryant's name appears in just two sentences of the Complaint—the only substantive one being that Chief Bryant "is the

7

duly elected chief of police for City of Atlanta and is responsible for the supervision, maintenance and operation of Atlanta Police Department[.]" (Compl. ¶ 3.) As discussed above, liability in § 1983 cases cannot be premised solely on a theory of *respondeat superior*. *See Bryant v. Jones*, 575 F.3d 1281, 1299 (11th Cir. 2009). A supervisor can be liable only "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Id.* (citation omitted). Under even the most generous reading of the Complaint, the Plaintiff has failed to plead either element of this standard and, in fact, did not oppose Chief Bryant's dismissal at all in his response brief. Consequently, the Court finds that the Plaintiff has abandoned his claims against Chief Bryant, and the Motion to Dismiss is granted with prejudice as to him. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014).

## C. Qualified Immunity as to Officer Gachette

Finally, the Defendants contend that the false imprisonment claim against Officer Gachette is precluded by the doctrine of qualified immunity. As a matter of law, there is an absolute bar to both state and § 1983 claims alleging false imprisonment if the defendant officer had probable cause to arrest the plaintiff. *See Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). Probable cause exists "when an arrest is objectively reasonable based on the totality of the circumstances." *Patrick v. Andrews*, 356 Ga. App. 801, 803

(2020); *see also Poulakis v. Rogers*, 341 F. App'x 523, 526 (11th Cir. 2009) ("Probable cause to arrest for the commission of a crime may be found when the law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." (quotation marks omitted)). Where, as here, the facts known to the officer are not in dispute, probable cause becomes an issue of law for the court to decide. *See Kline v. KDB, Inc.*, 295 Ga. App. 789, 792 (2009); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

According to the Complaint and the attached ante litem notice, Officer Gachette was working at Lenox Square when he ordered the Plaintiff "over and over again" to leave the mall premises. (Compl. ¶¶ 10, 13 & Ex. A at 14.) After the Plaintiff refused to comply with this command, Officer Gachette arrested the Plaintiff and issued him a citation for criminal trespass. (*Id.* ¶ 16-17 & Ex. A at 14.) Criminal trespass occurs, in relevant part, when a person "knowingly and without authority . . . [r]emains upon the land or premises of another person . . . after receiving notice from the owner, rightful occupant, or, upon proper identification, an authorized representative of the owner or rightful occupant to depart." O.C.G.A. § 16-7-21(b)(3). The Plaintiff's actions, accepting his own allegations as true, meet each of these elements. Thus, Officer Gachette had an objectively reasonable basis to arrest the Plaintiff and Count Four for false imprisonment should be dismissed with prejudice. *See Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009) ("If no

constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." (quotation marks omitted)).

As a point of clarification, the Court does not intend for this qualified-immunity holding to extend to Count One of the Complaint. Contrary to Count Four, the central focus in Count One is not the validity of the Plaintiff's arrest, but Officer Gachette's use of force in executing the arrest. (Compl. ¶¶ 33-34.) "When evaluating an excessive force claim, courts analyze the particular facts of each case to determine whether the force used was justified under the totality of the circumstances." *German v. Sosa*, 399 F. App'x 554, 556 (11th Cir. 2010) (quotation marks omitted). This "objective reasonableness" standard does not rise and fall on whether the arrest itself was supported by probable cause. Rather, the relevant considerations include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 557 (quotation marks omitted). Because the Motion to Dismiss does not address the Plaintiff's excessive force allegations, the Court does not reach whether Officer Gachette is immune from the claim(s) asserted under Count One.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS in part and DENIES in part the Defendants' Motion to Dismiss [Doc. 2]. Counts One through Six are

dismissed with prejudice as to Chief Bryant in his official and individual capacities and as to Officer Gachette in his official capacity. Count Four is also dismissed with prejudice as to Officer Gachette in his individual capacity. Counts One through Six are dismissed without prejudice as to the City, and the Plaintiff may amend his pleadings within 14 days of this Order in accordance with the Court's instructions.

SO ORDERED, this ___5th___ day of July, 2022.

                                                                                                           _____
                                                                                                            THOMAS W. THRASH, JR.
                                                                                                            United States District Judge